**Casey S. Murdock, OSB #144914**
Murdock@fdfirm.com
FROHNMAYER, DEATHERAGE,
JAMIESON, MOORE, ARMOSINO
& McGOVERN, PC
2592 East Barnett Road
Medford, OR  97504
Phone: (541) 772-2333
Fax: (541) 779-6379

**Marshal J. Hoda, Texas State Bar #24110009**
marshal@thehodalawfirm.com
The Hoda Law Firm, PLLC
3120 Southwest Fwy
Ste 101, PMB 51811
Houston, TX 77098
Phone: (832) 848-0036
        *Pro hac vice*

*Attorneys for Plaintiff Maria Kamci*

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## MEDFORD DIVISION

|  |  |
|---|---|
| Maria Kamci, | |
| *Plaintiff,* | Case No. 1:25-cv-834 |
| v. | |
| International Assets Market, Fran Davis, Barry Duvigneaud, and John Does 1 – 20, | **Complaint** |
| *Defendants.* | **Demand for Jury Trial** |

- 1 -

Plaintiff Maria Kamci hereby sues International Assets Market, Fran Davis, Barry Duvigneaud, and John Does 1 – 20 (collectively, the "Defendants"). In support, she alleges as follows.

## I.    Preliminary Statement

1.    Our country is in the midst of a crypto-fraud crisis. Foreign criminal organizations have stolen billions of dollars from hardworking Americans in what are known as "pig-butchering scams"—and are continuing to do so even as we speak.

2.    Pig-butchering scams vary in their particulars, but in outline they are all the same. The scammers begin by initiating contact with and building trust with the victim, using diabolical psychological techniques to lower their target's defenses. They then convince the victim to "invest" using a realistic-looking online cryptocurrency-trading platform. The victim deposits money and, over time, profits appear to grow. But when the victim tries to withdraw, problems emerge. The scammers demand more money in 'taxes' or 'fees' to 'unlock' the victim's account. Desperate for their money back, victims often comply. When it finally becomes clear that the whole enterprise is a sham, it is too late. The scammers disappear with victim's money, and cut off contact.

3.    Tens of thousands of hardworking Americans have lost their life savings to these scams. Recent literature indicates that pig-butchering organizations have stolen more than $75 billion from victims worldwide since

2020. The FBI reports that Americans lost more than $5 billion to pig-butchering scams in 2023 alone.

4.     This is an action by a victim of one such  scam, Maria Kamci. The Defendants tricked Ms. Kamci into investing on a platform that turned out to be a scam, and in so doing stole $386,000 of her savings. Ms. Kamci has now been "slaughtered," in the scammers' parlance, and her money spirited away to foreign bank accounts and crypto wallets.

5.     This action and coordination with law enforcement are Ms. Kamci's only hopes for recovery. In this suit, she seeks the return of the assets stolen from her and additional damages and equitable relief described below.

**II.     Parties**

6.     Plaintiff Maria Kamci is an individual. Ms. Kamci is a resident of Littleton, Colorado.

7.     International Assets Market, a/k/a IAT, is a fraudulent cryptocurrency-investment platform. Its headquarters and situs of organization (if any), are presently unknown.

8.     Fran Davis is an individual of unknown citizenship whose present whereabouts are unknown.

9.     Barry Duvigneaud is a citizen of the United States currently residing in Phoenix, Oregon.

10.     Defendants John Doe 1 – 20 are as-yet unidentified individuals, business entities, and/or unincorporated associations. These persons are IAT's and Davis's co-conspirators.

### III.    Jurisdiction & Venue

11.    This is an action under the Racketeer Influenced and Corrupt Organizations Act ("RICO").  Accordingly, this Court has federal-question jurisdiction.

12.    Each of the Defendants are subject to the personal jurisdiction of this Court because they direct business activities towards and conduct business with consumers throughout the United States, including within the State of Oregon and this district through at least one fraudulent website and mobile application accessible from Oregon. Alternatively, the Defendants are subject to personal jurisdiction in this district because (i) they are not subject to jurisdiction in any state's court of general jurisdiction and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

13.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(c)(3), which provides that a foreign defendant may be sued in any judicial district.

### IV.    Allegations

14.    In November 2024, Ms. Kamci joined a Facebook group called Legacy Investment for Early Retirement while researching investment advice and training tips. At the direction of other members of the group, Ms. Kamci messaged Fran Davis, the group's administrator, for personalized investment advice.

15.    The two began messaging frequently. Davis eventually told Ms. Kamci about his success investing and trading cryptocurrencies and

introduced her to a platform called IAT. Davis told Ms. Kamci that he knew how to make profits using IAT and offered to teach her how to do the same. Davis encouraged Ms. Kamci to make an IAT account, which she soon did.

16.     Over the next several months, Davis 'trained' Ms. Kamci in cryptocurrency trading using the IAT platform. When Ms. Kamci was ready to make a deposit on IAT, the platform provided her asset-transfer instructions via the platform's customer-service chat or on its "deposit" page, or from Davis himself.

17.     On one such occasion, Davis provided Ms. Kamci with wire transfer instructions to a Wells Fargo bank account owned by Barry Duvigneaud, an Oregon resident affiliated with IAT, according to Davis. Ms. Kamci wired a total of $90,000 to Duvigneaud across four transactions. A ledger of Ms. Kamci's wire transfers to Duvigneaud is set out as <u>Attachment 1</u> to this Complaint.

18.     After transferring funds using methods specified by Davis or IAT, the amount of the funds Ms. Kamci 'deposited' would then be reflected in her transaction history and account balance on the IAT platform. Over time, she sent assets to IAT with a dollar-denomiated value of $386,000. A ledger of Ms. Kamci's cryptocurrency transfer to IAT is set out as <u>Attachment 2</u> to this Complaint.

19.     Ms. Kamci's balance on the IAT platform appeared to grow rapidly—eventually showing that she had crypto assets worth more than $1.2

million in her account. But when she attempted to withdraw her funds, IAT informed her that her that she could not do so. Ms. Kamci soon realized that she had been scammed.

20.     The IAT platform was never a "trading platform" of any sort. It was a simulacrum of a trading platform where no actual trading or investment ever occurred. The account balances, the purported profits, and the transaction history displayed were real only in the sense that they reflected the monies Ms. Kamci sent to the Defendants. And this was simply to ensure that the platform appeared to be functioning. The assets Ms. Kamci transferred to the Defendants were never 'deposited' on IAT. They were never used for cryptocurrency trading. They were simply stolen.

21.     Ms. Kamci was not the only victim of the IAT scam. At least dozens of other persons were scammed by the Defendants in a period extending over one year.

### V.     Causes of Action

22.     Ms. Kamci brings the following causes of action against the Defendants. The allegations set out above are incorporated into each of the causes of action that follow as if fully restated therein.

### Count One
### Racketeering in Violation of 18 U.S.C. § 1964(c)
### Against All Defendants

23.     International Assets Market, Fran Davis, Barry Duvigneaud, and John Does 1 – 20 (collectively, the "Defendants") constituted an

"enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), in that they are a group of individuals and legal entities associated in fact. Their enterprise is referred to herein as the "Pig Butchering Enterprise."

24.    The Pig Butchering Enterprise engaged in numerous acts of wire fraud in violation of 18 U.S.C. § 1343, as described above. They did so using their online platform and digital communications with Ms. Kamci and others. Ms. Kamci relied on the Defendants' fraudulent statements to her detriment.

25.    The Defendants shared the common purpose of defrauding and stealing from Ms. Kamci and other victims and thereby converting and exercising dominion over their assets.

26.    The Defendants are each a "person" within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c). Each of them individually conducted, participated in, engaged in, and operated and managed the affairs of the Pig Butchering Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). Said pattern of racketeering activity consisted of, but was not limited to, the acts of wire fraud described above.

27.    All the acts of racketeering activity described above were related so as to establish a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c). The Defendants' common purpose was to defraud Ms. Kamci and other victims and convert and exercise dominion and control over those

victims' assets. Each Defendant, directly or indirectly, participated in all of the acts and employed the same or similar methods of commission.

28.    The Pig Butchering Enterprise was of sufficient longevity for its members to carry out their purposes on a large scale. All of the acts of racketeering described above, were continuous so as to form a pattern of racketeering activity in that the Defendants have engaged in the predicate acts for a substantial period of time exceeding one year. The Pig Butchering Enterprise successfully defrauded at least dozens of persons and converted millions of dollars worth of its victims' assets, including Ms. Kamci's. To the extent the Pig Butchering Enterprise's activities have ceased or cease while this litigation is pending, these acts posed threat of indefinite duration at the time they were committed and will have stopped only because they were fortuitously interrupted by events beyond the Defendants' control.

29.    As a direct and proximate result of, and by reason of, the activities of the Defendants and their conduct in violation of 18 U.S.C. § 1962(c), Ms. Kamci was injured in her business and property within the meaning of 18 U.S.C. § 1964(c).  The Defendants stole Ms. Kamci's savings and thereby caused her to suffer deprivations and extreme mental and emotional distress. she is, therefore, entitled to recover threefold the damages sustained together with the cost of the suit, including costs, reasonable attorneys' fees and reasonable experts' fees.

/ / /

## Count II
### Conversion
### Against All Defendants

30.     As more fully alleged above, the Defendants misappropriated Ms. Kamci's assets.

31.     The Defendants converted Ms. Kamci's assets to their own use or the use of others not entitled to them. They have exercised dominion and control over those assets to Ms. Kamci's exclusion and detriment.

32.     Ms. Kamci has suffered damages as a direct and proximate result of Defendants' conversion.

## Count III
### Fraud
### Against All Defendants

33.     To prevail on a fraud claim, a plaintiff must show that the defendant made (1) a false representation, (2) of a matter of material fact, (3) with knowledge of its falsity, (4) for the purpose of inducing action thereon, and (5) that the plaintiff relied upon the representation as true and acted upon it to her or her damage.

34.     As alleged above, the Defendants made numerous false representations to Ms. Kamci, including that theirs was a legitimate trading platform through which Ms. Kamci might make a return on her assets. They did so with knowledge of the falsity of these statements and with actual intent to induce Ms. Kamci to rely on their statements to her detriment, which she did.

## VI.    Jury Demand

35.    Plaintiff demands a trial by jury on all claims so triable.

## VII.    Relief Sought

36.    Ms. Kamci requests that judgment be entered against each of the Defendants on each of the causes of action set out above. she seeks relief as follows:

> a.  Imposition of a constructive trust over her stolen assets and return of those assets to her possession;
>
> b.  Monetary damages;
>
> c.  Statutory trebled damages pursuant to 18 U.S.C. § 1964(c);
>
> d.  Punitive damages;
>
> e.  Costs, including reasonable attorneys' fees under 18 U.S.C. § 1964(c);
>
> f.  Pre- and post-judgment interest;
>
> g.  Injunctive and equitable relief insofar as required to preserve assets for recovery, halt the Defendants' unlawful acts, and otherwise enable the exercise of the Court's powers and effecutate its orders;
>
> h.  Other relief as the Court deems just and proper.

Dated:  May 16, 2025                    Respectfully submitted,

                                        THE HODA LAW FIRM, PLLC


                                        _____

                                        Marshal J. Hoda, Esq.
                                        Tx. Bar No. 2411009
                                        12333 Sowden Road, Suite B
                                        PMB 51811
                                        Houston, TX 77080
                                        o. (832) 848-0036
                                        marshal@thehodalawfirm.com

                                        *Attorney for Plaintiff*
                                        *Pro hac vice pending*



                                        FROHNMAYER, DEATHERAGE, JAMIESON,
                                        MOORE, ARMOSINO & McGOVERN, P.C.,

                                        By:_____
                                            **Casey S. Murdock, OSB #144914**
                                            Murdock@fdfirm.com
                                            *Of Attorneys for Plaintiff*
                                            LEAD COUNSEL

## Attachment 1 – Wire Transfers to Barry Duvigneaud

| Date | Currency | Amount | Recipient |
|---|---|---|---|
| 12/5/2024 | USD | $15,000.00 | Barry Duvigneaud |
| 12/9/2024 | USD | $30,000.00 | Barry Duvigneaud |
| 12/12/2024 | USD | $23,000.00 | Barry Duvigneaud |
| 12/23/2024 | USD | $22,000.00 | Barry Duvigneaud |

## <u>Attachment 2 – Cryptocurrency Transfer to IAT</u>

| <u>Date</u> | <u>Currency</u> | <u>Crypto Amount</u> | <u>USD Amount</u> | <u>Transaction Hash</u> |
|---|---|---|---|---|
| 1/17/2025 | BTC | 2.807737 | $285,803.03 | 50bd99b344b4ac59adab78498c6b7adc9a00 2dba99a0a0dee7ff7b931a028a2f |